# Sims *v.* Knight.

*Bill in Equity to enforce the Specific Performance of a Contract to convey Land.*

1. *Construction of Contract.*—S. & H., being seized and possessed of a tract of land, entered into a contract with B., by which they agreed to sell to·B. a certain tract of land, and to convey the same to him on payment of the purchase-money; B. agreeing to pay a stated amount in cash, to give his promissory notes for the balance, payable respectively ·on the first days of January, 1877, 1878 and 1879, and to execute to S. & H. a mortgage on the crops of cotton to be grown by him on said land during the years 1877, 1878 and 1879, as security for the payment of said notes, and to ship all of said crops of cotton to them, to be by them sold and the proceeds applied to the extinguishment of such of said notes as might be then unpaid. On the same day S. & H. executed to B. a bond, conditioned to convey the land upon the full payment of the purchase-money therefor; and B. made the cash payment, gave his notes as agreed ·on, and executed to S. & H. a mortgage on said cotton crops, reciting that it was executed to "more effectually secure the payment of said promissory notes as they respectively mature;" providing that, upon payment of the notes at maturity, the mortgage should become void, and containing a power of sale on default in the payment of the notes, or either of them, the proceeds of sale, after paying the expenses of the sale, to be applied to any balance that might be then due and unpaid on the notes. These notes B. paid at or before their maturity, but shipped no cotton to S. & H.—*Held*, on bill filed by B. for a specific performance of the contract of sale,

1. That the contract of sale, the bond for title and the mortgage, having been executed on the same day, by and between the same parties, and relating to the same subject-matter, must be construed together as one and the same transaction.

[Sims v. Knight.]

2. That the agreement to execute the mortgage and the mortgage as executed were intended as additional security for the payment of the notes, and the stipulation for the delivery of the cotton was only inserted for the purpose of making the security more certainly available; that the payment of the notes at maturity was a compliance with the agreement and a satisfaction of the mortgage, and that B. was entitled to a specific performance of the contract.

APPEAL from Hale Chancery Court.
Heard before Hon. CHARLES TURNER.

The bill in this cause seeks the specific performance of a contract executed by Thomas W. Sims and Dempsey Harrison, as vendors, by which they agreed to convey certain lands to Parham N. Booker, and was filed on 21st October, 1879, by Eva H. Knight and Martha K. Booker, claiming, by a written assignment, the rights and interest of the said Parham N. Booker under said contract, against Thomas W. Sims, Parham N. Booker, and the personal representative and heirs at law of Dempsey Harrison, who departed this life, intestate, after the execution of said contract. On the hearing, the chancellor caused a decree to be entered granting the relief prayed, and also filed an opinion, which is substantially adopted by this court. The opinion of the chancellor sufficiently states the case made by the record, and is as follows:

TURNER, CH.—"Sims & Harrison, as judgment creditors of Booker and Knight, acquired title to lands known as the 'Peck Place' by purchase at execution sale. Pending and subject to the right of redemption, in settlement of all claims against Booker and Knight, they entered into a contract bearing date April 4th, 1876, in and by which they agreed upon their part to sell to Parham N. Booker the 'Peck Place,' and to convey the same to him upon full payment of the purchase-money, and to execute bond for titles. On his part Parham N. Booker agreed: *First*, to pay five thousand dollars in cash; *second*, to execute promissory notes for the balance, payable in specified sums respectively on January 1st, 1877, 1878, 1879 and 1880, with the privilege of anticipating payment, at a discount of ten per cent.; *third*, to retain the presence and services of Ed. W. Booker and Wm. N. Knight in the management and cultivation of the place, to which they also agreed; *fourth*, to execute a mortgage upon the crops of cotton to be grown on said lands in the years 1877, 1878 and 1879, so as to secure the payment of said notes, or so much as should remain unpaid, and to ship all of said crops to Sims & Harrison, to be by them sold and the proceeds applied to the extinguishment of such of said promissory notes as may then be unpaid.

"On the same day Sims & Harrison executed their bond for

title in the usual form, binding themselves to make conveyance of the land upon the payment of $14,745.06, said bond to be void upon a redemption from the sale under which they held. On the same day Parham N. Booker executed to Sims & Harrison a mortgage upon the crops to be raised upon the place during the years 1877, 1878 and 1879.

"The purchase-money stipulated to be paid has been paid, and the assignees of Parham N. Booker seek by this bill a conveyance of the land.

"The defendants Sims & Harrison object to such a decree, because they say that, by the terms of the contract, and as part consideration for the sale, the crops for three years were to be shipped to them, upon the sale of which they expected commissions as merchants; that none of said crops were shipped, and the contract was not in that respect complied with. They, therefore, insist that before the complainant can have a specific performance of the contract, they must compensate them for the loss of said commissions.

"The case hinges solely upon the construction to be given to the contract between these parties, as evidenced by these three instruments. These instruments, having been executed upon the same day, between the same parties, and touching the same subject-matter, are to be construed together, as evidence of one transaction, and effect given, as far as possible, to each; the object of such construction being to arrive at the intention of the parties.

"Exhibit 'A' to the bill is to be construed and treated as the memorandum of the original contract or agreement of the parties; and Exhibits 'B' and 'C,' as the execution and carrying into effect of the stipulations of said agreement. By the original agreement Sims & Harrison sold the land, and obligated themselves to give a bond for titles. Exhibit 'B' is the bond which, in accordance with that obligation, they executed, and which complainants' assignor accepted as a compliance therewith. This instrument is a straight-out bond for the conveyance of land upon the payment of certain sums at certain fixed times. Standing by itself, it presents no other consideration for the conveyance than the payment of the money. In that respect it is in strict compliance with the terms of the original memorandum. In paragraph numbered 1 of that agreement, Sims & Harrison agree to make conveyance 'upon the full and complete payment of the purchase-money of the same, as hereinafter stipulated.' In argument an attempt is made to refer the expression, 'hereinafter stipulated,' to all the subsequent stipulations of the agreement. The natural and logical reference is to the next succeeding paragraph, which prescribes the amount and times of payment, and is, in fact, the only stipula-

tion in the memorandum as to the *payment* of the purchase-money; and it is upon *payment*, and upon payment only, that the *bond* is conditioned, and the agreement to sell and convey is predicated. This construction becomes all the more apparent, when we turn to the mortgage, and observe the construction which the parties themselves put upon their agreement. This mortgage is in the usual form of a crop mortgage. It recites the execution of the notes for the purchase of the land, and the security of the land therefor; recites a willingness upon the part of the grantors therein 'more effectually to secure the payment of said promissory notes as they respectively mature.' The defeasance is in the following words: 'This conveyance is intended as a mortgage to secure the payment of said promissory notes at the maturity thereof respectively, and upon such payment these presents shall become void. But if default be made in the payment of said promissory notes, or any one of them, in every such case the said grantees are hereby authorized and empowered to take possession of the personal property herein conveyed, and sell the same in the city of Mobile, in the usual course of trade, or at public outcry in the town of Greensboro, in said county of Hale, after ten days notice of the time, terms and place of sale, either by posters or hand-bills, or in some newspaper published in said county; the proceeds of such sale shall be applied to paying the expenses of making said sale, and then to the payment of such of said promissory notes as may be then due and unpaid.'

" The sole purpose of this instrument is security for the payment of the purchase-money notes; and it is only upon failure to pay, that the mortgagee is entitled to sell the crops to be raised, and then only to the extent of the amount of the purchase-money remaining unpaid. This instrument was executed and accepted as a compliance with the terms of the original memorandum; and if the intention of the parties is to be derived from the plain, unambiguous language of these instruments, construed as one, it is evident, that no idea of commissions upon the sale of crops entered into the minds of the parties, as forming any part of the consideration for the purchase of the lands. Even in the agreement itself no mention is made of commissions, and a strict construction of the clause thereof in regard to the shipment of crops would exclude all idea that Sims & Harrison were to have any commissions upon sales, the language being, 'and to ship all said crops to said Sims & Harrison, to be by them sold and the *proceeds* applied to the extinguishment of such of said promissory notes' as may be then unpaid. In order to infer from this expression a promise to pay or allow commissions upon sales, we must add something to the words used, or infer that Sims & Harrison were cotton

commission merchants, and were to sell in the regular course of trade, which nowhere appears in the agreement. The mortgage, however, provides that, in the case of a sale of crops to satisfy the debt, the expenses should be first paid from the proceeds of said sale; but the agreement provides that the *proceeds* (without any allowances) should be applied to the debt. Uninfluenced by any custom among commission merchants, I should, upon reading this agreement, conclude that there was one commission house willing to receive a debt due them, with interest, without exacting commissions upon the sales of cotton raised upon the lands held by them as security for such debt.

" The sole consideration expressed in, or to be inferred from these instruments, is the money stipulated to be paid for the land. Upon the payment of the money, the obligation of the purchaser was discharged, and his equitable right to the lands perfected. All the other stipulations of the agreement were designed as security for the prompt payment of the money consideration."

The decree rendered is here assigned as error.

THOS. SEAY, for appellant.

JAMES G. GARRETT, *contra.*

STONE, J.—The only argument urged for reversal rests on the averment that, in addition to the payment by Booker of the purchase-price of the land, he bound himself to deliver to Sims & Harrison for sale the cotton crops to be grown on the plantation during the years 1877, 1878 and 1879; and that he had failed to do so. This argument rests for its support on the agreement of bargain and sale, executed by all the parties. Even if that agreement be considered alone, we doubt if the foregoing is its true interpretation. The mortgage to be given on the crops was manifestly intended as security for the payment of the purchase-money, and the stipulation for delivery was only inserted for the purpose of making the security more certainly available.

But the agreement of bargain and sale must not be construed alone. Carrying out its stipulations, the vendors, Sims & Harrison, executed a bond to Booker, conditioned to make him title on the payment of the purchase-money notes, without a word said about the delivery of cotton; and Booker, the purchaser, executed a mortgage on the crops, expressly stipulating it was given to secure the purchase-money notes, and to be void, if the notes were paid at maturity. It is admitted as fact, by agreement found in the record and signed by all the counsel, that the first three of the purchase-money notes were paid as

[Gordon, Rankin & Co. v. Tweedy.]

they severally matured, and the last was paid nearly a year before its maturity. We fully concur with the chancellor in the relief he granted, and substantially in the arguments by which he reached his conclusions.

Affirmed. .